EDISON SAULT ELECTRIC CO. *v.* MANISTIQUE PULP & PAPER CO.

1. CONTRACTS—CONSTRUCTION.

A contract should be construed to carry into effect the intention of the parties, which must be ascertained from the language of the instrument and the facts and circumstances attending its execution, but if the terms are so clearly expressed that there is no ambiguity, in the absence of fraud or mistake, the terms of the contract control and an intent differing from the plain terms of the contract cannot be read into it.

2. Electricity—Contracts—Minimum Charge—Discount.

> Contract for sale of electricity which provided that consumer guaranteed that the amount paid by it thereunder should equal at least $60,000 for each contract year *held,* not performed by consumer until it actually pays such amount regardless of fact that provision was made for discount for prompt monthly payment for electricity used.

3. Same—Contracts—Minimum Charge—Discounts—Amendatory Contracts—Interruptions in Service.

> Requirement of original contract, rate schedule annexed thereto and amendatory contract relative to sale of electricity that consumer pay the sum of $60,000 as an annual minimum charge *held,* not reduced by amount of discounts allowed for prompt payment of monthly bills because of provision of amendatory contract that such minimum amount was guaranteed "except as otherwise provided in the orginal power contract" and rate schedule, where only exception contemplated in reduction of such minimum was the one made for interruptions in service.

Appeal from Schoolcraft; Runnels (Herbert W.), J. Submitted October 21, 1936. (Docket No. 113, Calendar No. 39,056.) Decided January 4, 1937.

Assumpsit by Edison Sault Electric Company, a Michigan corporation, against Manistique Pulp & Paper Company, a Michigan corporation, on written contracts for sums due for electricity. Judgment for plaintiff. Defendant appeals. Affirmed.

*Warner & Sullivan,* for plaintiff.

*Hixson & Herbert,* for defendant.

NORTH, J. Plaintiff, Edison Sault Electric Company of Sault Ste. Marie, entered into a contract to furnish electrical power, for a 10-year period, to the defendant, Manistique Pulp & Paper Company of Manistique, on June 30, 1931. The contract con-

tained the following provision for a minimum annual charge:

"(2) Minimum charge.

"The consumer guarantees that the amount paid by it for energy and demand charge under this contract shall equal at least the sum of $60,000 for each contract year. * * *

"If the sum of $60,000 shall not have been paid by the consumer to the seller for energy and demand charge during any contract year, the seller shall, on the monthly bill rendered for the last month of such contract year, add an amount sufficient to make the total sums paid and thereupon to be paid by the consumer to the seller for said energy and demand charge during such contract year equal to the sum of $60,000, subject, however, to a reduction of $7 per hour for each hour of interruption of service in excess of an aggregate of 120 hours in such year."

To this contract was attached an industrial power rate schedule providing for discounts of bills if payment were made within 15 days. We quote the provisions of this rate schedule pertinent to this case:

"Prompt payment.

"Payment is to be made for energy and demand charges monthly. If the bills are paid within 15 days from the date same are rendered, a discount of ten per cent. upon the demand charge and four per cent. upon the energy charge will be allowed to the consumer, and payment by consumer to avoid loss of discount shall not deprive consumer of right of adjustment for inaccuracies in measuring or billing.

"Minimum annual charge.

"The minimum annual charge shall be $60,000 per year, subject, however, to a reduction of $7 per hour for each hour of interruption of service in excess of an aggregate of 120 hours in such year."

Before any power service was rendered and on January 27, 1932, the parties entered into an "amendatory contract" making certain changes in the original contract, a part of which reads:

"Second: That the first paragraph of section (2) of said original power contract entitled 'minimum charge' is hereby amended to read as follows, to-wit:

"(2) Minimum charge:
"The consumer guarantees that the amount paid by it for energy and demand charge under this contract shall equal at least the sum of $60,000 for each contract year, except as otherwise provided in the original power contract and exhibit A .(rate schedule) hereto."

There was also attached to this amendatory contract an industrial power rate schedule (exhibit A) containing provisions identical with the above excerpt from the rate schedule attached to the original contract.

This suit involves the construction of the contract. The controversy is this: Plaintiff claims the contract provides that defendant's agreement is actually to pay plaintiff a minimum of $60,000 annually, and that this is determined by the total in fact *paid,* whether for net monthly charges or gross monthly charges. Defendant claims such determination should be on the basis of the total amount of the gross monthly bills, notwithstanding such monthly bills were discounted and the total actually *paid* annually is less than $60,000. The circuit judge tried the case without a jury and sustained plaintiff's contention. Defendant has appealed.

The parties have operated under the contract for three years. No controversy arose during the sec-

ond year because the total of discounted bills paid during that year exceeded $60,000. But under the holding of the circuit judge defendant is required to pay plaintiff the further sum of $3,587.08 for the first contract year, and $3,922.40 for the third contract year.

"A contract should always be so construed as to carry into effect the intention of the parties, which must be ascertained from the language of the instrument, and the facts and circumstances attending its execution." *Mathews* v. *Phelps* (syllabus), 61 Mich. 327 (1 Am. St. Rep. 581).

But if the terms of a contract are expressed in words of such clear and definite meaning that there is no ambiguity, in the absence of fraud or mistake (of which no claim is here made), the terms of the contract control. There is then no room for a construction by the courts which departs from the express terms of the contract. An intent differing from the plain terms of the contract cannot be read into it. *Dunn* v. *Detroit Federation of Musicians*, 268 Mich. 698; *Michigan Trust Co.* v. *Grand Rapids Hotel Co.*, 265 Mich. 328, at page 338; *Sturgis National Bank* v. *Maryland Casualty Co.*, 252 Mich. 426.

The quoted agreement both in the original and in the "amendatory contract" specifically and clearly provides:

"The consumer guarantees that the amount *paid* by it * * * under this contract shall equal at least the sum of $60,000 for each contract year."

The original contract also contains the following provision:

"If the sum of $60,000 shall not have been *paid* by the consumer to the seller * * * during any

contract year, the seller shall * * * add an amount sufficient to make the total sums *paid* * * * during such contract year equal the sum of $60,000.''

The portion of the contract last above quoted is contained in paragraph 2 of section 2 of the original contract. The amendatory contract provides:

''That the first paragraph of section (2) of said original contract entitled 'minimum charge' is hereby amended to read as follows, to-wit: (Here follows the amended paragraph 1 of section 2).

''Except as hereinabove amended the provisions of said section (2) of said original power contract shall continue in full force and effect.''

By reason of the foregoing, the portion of section 2 quoted from the original contract continues ''in full force and effect'' as a part of the amendatory contract. The final provision in the amendatory contract is that it and the original contract ''shall be together construed, treated and performed by the parties as if the aforesaid amendments of said original power contract and exhibit A thereto as herein contained and attached had originally constituted parts of said original power contract.''

If there is no provision in the amendatory contract which modifies the provisions above quoted, which question we hereinafter discuss, we are of the opinion that the quoted terms of the contract are so definite, clear and explicit that there can be no doubt as to its meaning. Repeatedly the contract provides that the amount to be ''paid'' each contract year shall be $60,000. We think plaintiff is correct in its contention that the contract is not performed by defendant until it actually pays to plaintiff during each contract year the sum of $60,000.

But appellant strenuously insists that regardless of the proper construction of the original contract,

the amendatory contract by an additional provision therein contained modifies the original contract and as so modified it should be interpreted in accordance with appellant's contention. We quote from appellant's brief:

"If there were ever any doubt under the original contract as to whether or not the defendant is entitled to discount on the minimum payment, the new and added language of the second contract, being the one at bar, completely dispels it."

The particular provision to which appellant refers as "the new and added language of the second contract" is the italicized portion of the following, quoted from paragraph 1 of section 2 of the amendatory contract. The portion not italicized is found in both contracts.

"The consumer guarantees that the amount paid by it for energy and demand charge under this contract shall equal at least the sum of $60,000 for each contract year, *except as otherwise provided in the original power contract and exhibit A hereto.*"

Appellant contends that by excepting the provisions in "exhibit A hereto," the parties were excepting the discounts provided for in exhibit A which, among other things, included the schedule of rates. We think this is a strained construction and if intended by the parties would not have been inserted in the amendatory contract in this obscure and indefinite manner. Instead the fair construction is this: In both the original power contract and in exhibit A there is a definite and express exception to the requirement that defendant's minimum annual charge shall be $60,000. That exception, as appears both in the original power contract and in exhibit A attached to the amendatory contract, is in the following words:

"Subject, however, to a reduction of $7 per hour for each hour of interruption of service in excess of an aggregate of 120 hours in such year."

Careful consideration of both the original power contract and the amendatory contract, together with the exhibit A attached to each, satisfies us that the exception referred to in the italicized words above quoted is the exception for interruption of service in excess of 120 hours during the contract year. In the preparation of these contracts the respective parties were represented by able counsel. It seems incredible that if the change were sought to be made which appellant insists was made by the terms of the amendatory contract that it would not have been expressed in clear, concise and definite terms. A simple provision in the amendatory contract that the computation and determination of the minimum annual charge of $60,000 should be based on the amount of the gross monthly bills, instead of on the amount of the discounted monthly bills, would have sufficed. We are not in accord with appellant's contention that this phase of the original contract was in any way altered by the amendatory contract.

In view of the determination reached it is unnecessary to consider other questions presented in the briefs. Judgment entered in the circuit court is affirmed, with costs to appellee.

FEAD, C. J., and WIEST, BUTZEL and BUSHNELL, JJ., concurred. TOY, J., took no part in this decision. SHARPE and POTTER, JJ., did not sit.